IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

vs.                                                           CRIMINAL ACTION NO. 3:98-00047-01

KELVIN ANDRE SPOTTS, a/k/a Shorty

**MEMORANDUM OPINION AND ORDER**

On December 3, 2019, this Court entered a Memorandum Opinion and Order granting, in part, and denying, in part, Defendant Kelvin Andre Spotts' *pro se* Motion for Reduction of Sentence under § 404(b) of the First Step Act of 2018 ("The First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, 5222. Finding the Court was no longer bound by the constraints that existed in 1999 when Defendant's sentence originally was pronounced, the Court exercised its authority under the First Step Act and granted Defendant a slight downward variance from 360 months to 324 months on Count Two for violating 21 U.S.C. § 846, followed by a consecutive sentence of 60 months on Count Thirteen for violating 18 U.S.C. § 924(c)(1). The Court also reimposed a six-year term of supervised release on Count Two and a three-year term of supervised release on Count Thirteen, to run concurrently. On February 5, 2020, the Court also denied Defendant's two *pro se* motions both styled "Motion[s] for Reconsideration in Compliance With Fed. R. Civ. P. 52(b) & 59(e) *See Hutchinson v. Station*, 994 F.2d 1076, 1081 (4th Cir. 1993)."

Defendant appealed and, on August 16, 2021, the Fourth Circuit Court of Appeals vacated this Court's decisions and remanded the action to give the parties the opportunity to

present arguments addressing the sentencing factors set forth in 18 U.S.C. § 3553(a), as explained by the Fourth Circuit in *United States v. Collington*, 995 F.3d 347 (4th Cir. 2021).[1] The Fourth Circuit also directed this Court to appoint counsel.

Before the Fourth Circuit issued its mandate, Defendant filed a *pro se* motion on August 27, 2021, styled "Emergency Motion to Waive Rehearing Enbanc [sic] and Petition for Writ of Certiorari Deadlines and Request for Immediate Release from Federal Prison." ECF No. 1525. In this motion, Defendant asks that he be able to present arguments beyond those related to § 3553(a) factors. Specifically, he argues his § 924(c) conviction is invalid and the enhancement under 21 U.S.C. § 851 does not apply to his § 846 conviction, making his maximum penalty twenty years rather than thirty years as was imposed. As he already has served over twenty years, Defendant asks that he be immediately released.

Less than two weeks after Defendant filed this motion, the Fourth Circuit issued its mandate on September 7, 2021. The following day, this Court appointed counsel and directed her "to file a memorandum in support of Defendant's Motion for Compassionate Release (ECF No. 1508) and Defendant's Motion for Reconsideration of Mr. Spotts Prosecutorial Misconduct Claim and Additional Evidence 'in the Interest of Justice' (ECF No. 1518)." ECF No. 1527. However, before counsel could file a memorandum, Defendant filed another "Motion to Continue to Proceed 'Limited Pro Se.'" ECF No. 1528. In this motion, Defendant essentially reiterates his many previous challenges to his conviction and his ineffective of his counsel

---

[1] *Collington* was decided after this Court's decisions.

2

claim.[2] On that same day, Defendant also filed a "Motion to Add or Amend Order Entered on September 9th, 2021 (DKT ETY 1527)." ECF No. 1529. In that motion, Defendant asks the Court to direct counsel to address the subjects he raised in his other two *pro se* motions.

On October 8, 2021, the Court granted appointed counsel's motion for additional time to file a memorandum to give her more time to gather the relevant documents. Thereafter, Defendant filed two more *pro se* motions. First was his "Motion to Preserve 'Limited Pro Se Status' and Request Order for Government to Reply to Pro Se Filings." ECF No. 1532. Second was a "Motion for Compassionate Release." ECF No. 1533.

Thereafter, on November 3, 2021, the Fourth Circuit entered an Order recalling its September 7, 2021 mandate and withdrawing its August 16, 2021 judgment due to clerical errors in the judgment order vacating the wrong Orders of this Court.[3] The Fourth Circuit then entered a new judgment vacating this Court's December 3, 2019 and February 5, 2020 orders. It also simultaneously entered a new mandate.

A few days later, Defendant filed another *pro se* "Motion to Waive Right to Counsel," (ECF No. 1537), asking the Court to designate his counsel as "Stand By Counsel" and allow him to represent himself. He also asked this Court to order the Government to respond to

---

[2]This Court has rejected these collateral attacks of his conviction numerous times, and his arguments are well beyond the scope of the Fourth Circuit's remand for this Court to consider the § 3553(a) factors.

[3]The original mandate mistakenly vacated this Court's Orders of May 4 and December 8, 2020.

his prior *pro se* motions, which he piecemealed together from his other filings and included with his current motion.

Given the nature and volume of Defendant's *pro se* motions, defense counsel asked for additional time to consult with him before submitting a memorandum in support of his request for relief. The Court granted the motion, directing a memorandum be filed on or before December 7, 2021. Counsel timely filed a memorandum on Defendant's behalf, but on December 16, 2021, the Fourth Circuit issued another Opinion vacating this Court's May 4, 2020 Order denying compassionate release. Before the Fourth Circuit issued its mandate, the Government filed its Response to the earlier motions.

Thereafter, Defendant filed another *pro se* "Emergency Motion for Immediate Release" (ECF No. 1550), asserting his attorney had refused to make arguments he believes warrant immediate release. He also filed a *pro se* Reply brief to the Government's Response to the memorandum filed by defense counsel. The Fourth Circuit then issued its mandate. Thereafter, Defendant filed yet another *pro se* "Motion Requesting Court to Apply Section 403 of the First Step Act to All Claims Made." ECF No. 1553.

In sum, it would be an understatement to say that there is anything less than a dizzying array of motions currently pending before the Court. Although the Court appointed counsel to help Defendant refine his arguments, Defendant clearly is dissatisfied with counsel's decision to limit his arguments and evidence to those areas that counsel believed were before the

4

Court when the memorandum was submitted. As a result, Defendant moves to represent himself to supplement what his counsel has argued, but it does not appear that Defendant actually seeks to supplant his counsel's arguments. The Court finds a fair reading of his *pro se* pleadings demonstrate a hodge-podge of First Step Act/compassionate release arguments, with challenges that clearly qualify as successive pleadings under 28 U.S.C. § 2255. In the end, however, the Court finds it unnecessary to parse out the morass of Defendant's *pro se* filings because, as explained below, the Court finds the evidence and arguments made by counsel are sufficient to warrant release.

# I.
# BACKGROUND

On September 18, 1998, Defendant pleaded guilty to three counts of an eighteen-count superseding indictment. *Plea Agreement*, ECF No. 385. Count Two charged Defendant with conspiracy to distribute cocaine base, or "crack," powder cocaine, and marijuana in violation of 21 U.S.C. § 846. *Superseding Indictment*, ECF No. 30, at 3. Count Thirteen charged Defendant with use of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). *Id.* at 14. Count Eighteen charged Defendant with conspiracy to launder money in violation of 18 U.S.C. § 1956(h). *Id.* at 20–21.

Over the course of the following few months, Defendant filed a series of motions aimed at withdrawing his guilty plea, changing his representation, and otherwise lessening his sentencing exposure. *See, e.g.*, ECF Nos. 432, 433, 439, 440. Under 21 U.S.C. § 841(b)(1)(A)(iii) and an Information filed pursuant to 21 U.S.C. § 851, Defendant faced a statutory sentencing range at the time of twenty years to life imprisonment on Count Two. He

5

also faced a mandatory minimum sixty-month term of imprisonment under 18 U.S.C. § 924(c)(1), set to run consecutively to all other counts. With a criminal history category of VI and a total offense level of forty-three, Defendant faced a mandatory sentence of life imprisonment on Count Two alone under the then-mandatory Sentencing Guidelines. *See Presentence Report*, at 25, ECF No. 538; *Sentencing Tr.* at 19, ECF No. 570.[4]

Ultimately, the Court denied Defendant's motion to withdraw his guilty pleas, and it proceeded with sentencing on February 10, 1999. Twenty-two kilograms of crack were attributed to Defendant for the purposes of calculating his Guideline range, though additional quantities of marijuana and powder cocaine were noted in the presentence report. *Id.,* at 10-12. The Court concluded that Defendant was "the organizer, ringleader and in every sense the supervisor of [a drug distribution] conspiracy involving numerous individuals," responsible for importing a "huge quantity of cocaine and cocaine base" into the Southern District of West Virginia. *Sentencing Tr.*, at 26–27. The Court sentenced Defendant to a term of life imprisonment on Count Two, to be consecutively followed by a term of sixty months imprisonment on the § 924(c) firearm charge contained in Count Thirteen.[5] Nevertheless, the Court observed that it likely would not have imposed a sentence of life imprisonment if the Guidelines had not mandated such a sentence. *Id.* at 28. Although rendered irrelevant by

---

[4] The Court did not undertake an analysis of Defendant's Guideline range as to the § 924(c) firearm charge, as the total offense level was already above forty-three. *Sentencing Tr.*, at 19.

[5] The Court did not impose a term of imprisonment—or any other penalty—for the money laundering charges contained in Count Eighteen.

6

Defendant's lifetime term of imprisonment, the Court also sentenced Defendant to the ten-year statutory minimum term of supervised release. *Id.* at 29.

Thereafter, on October 30, 2015, the Court reduced Defendant's sentence on Count Two to 360 months imprisonment pursuant to the 2014 Drug Amendment to the United States Sentencing Guidelines. *Order Re: Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)*, ECF No. 1335. Defendant's consecutive sixty-month sentence on Count Thirteen remained in effect.

On December 3, 2019, the Court considered Defendant's arguments under the First Step Act and reduced Defendant's sentence again to 324 months on Count Two, followed by a consecutive sentence of sixty months on Count Thirteen. ECF No. 1480.[6] On February 5, the Court also denied Defendant's *pro se* motions for reconsideration. ECF No. 1493. As the Fourth Circuit vacated those decisions for reconsideration under *Collington* and, subsequently, vacated this Court's May 4, 2020 decision denying Defendant's motion for compassionate release, the Court must reanalyze Defendant's arguments in light of the evolving caselaw.

## II.
## DISCUSSION

After this Court issued its decisions, the Fourth Circuit held in *Collington* that "the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms."

---

[6] "On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act." *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019), as amended (Nov. 21, 2019) (citations omitted).

7

995 F.3d at 355 (citations omitted). Indeed, "section 404(c) of the First Step Act requires district courts to undertake 'a complete review of the motion on the merits.'" *Id*. at 359 (quoting FSA § 404(c), 132 Stat. at 5222). Additionally, any sentence imposed must be both procedurally and substantively reasonable. *Id*. at 358. If there is a large deviation from the Guideline range, a district court must justify the revised sentence under the totality of the circumstances to fulfill the substantive reasonableness requirement. *Id*. at 360. In the end, the sentence must be "'sufficient, but not greater than necessary' under the [18 U.S.C.] § 3553(a) factors." *Id*. (citation omitted). The Fourth Circuit also emphasized the remedial purpose behind the Fair Sentencing Act and the First Step Act in rectifying the racially disparate penalties, particularly as applied to crack cocaine offenses. *Id*. at 360-61. To afford a defendant both procedural and substantive reasonableness, the Fourth Circuit further held that district courts must "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *Id*. at 360; *see also United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020) (finding "[a] sentence is substantively unreasonable if it is longer than necessary to serve the purposes of sentencing" (citations omitted)).[7] With these principles in mind, the Court considers Defendant's arguments in this case.

---

[7] On September 14, 2022, the Fourth Circuit issued *United States v. Swain*, No. 21-6167, 2022 WL 4232906 (4th Cir. Sept. 14, 2022), which reiterated and expanded upon its decision in *Collington*. In *Swain*, the Fourth Circuit held "that pursuant to *Collington*, substantive reasonableness review applies to all section 404 proceedings." 2022 WL 4232906, at *3. The Fourth Circuit also reemphasized the underlying remedial purposes of resentencings.

In reviewing the instant case, the Court considers, *inter alia*, the pleadings (including all Defendant's *pro se* filings), supplemental material submitted by the parties, Defendant's medical records, the original presentence report, the judgment order, the sentencing transcript, and this Court's previous decisions. Originally, Defendant's statutory penalty for violating § 846 in Count Two was driven by the amount of cocaine base he conspired to distribute and resulted in a statutory range of not less than twenty years nor more than life, as consistent with the enhanced penalty under § 841(b)(1)(A)(iii). However, as the Superseding Indictment did not attribute any particular quantity of drugs to Defendant, he now faces no minimum sentence and a maximum sentence of thirty years under the default provision in § 841(b)(1)(C), with a § 851 enhancement. Likewise, Defendant's Guideline range on Count Two changed from the time he initially was sentenced to now. Originally, the Guideline range was life imprisonment. Now, Defendant's Guideline range is 360 months, which reflects the statutory maximum.[8] Consistent with these revisions, when the Court resentenced Defendant in 2015 pursuant to § 3582(c)(2), the Court imposed a 360 month sentence on Count Two, with a consecutive 60 month sentence on Count Thirteen. Defendant now seeks a further reduction.

In analyzing Defendant's motions, the court finds it "may reduce the term of imprisonment . . . [1] *after* considering the factors set forth in section 3553(a) to the extent that they are applicable, [2] *if it finds* that . . . extraordinary and compelling reasons warrant such a

---

[8]If not for the statutory maximum, the range would be 360 to life. Additionally, although Defendant makes *pro se* arguments that he should not be subject to an enhanced penalty under § 851 and his statutory maximum should be twenty years, the Court finds no merit to this argument.

9

reduction . . . and [3] [*if it finds*] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022) (italics, ellipses, and brackets original; internal quotation marks and citation omitted). Although there currently is no "applicable policy statement[] that governs a *defendant's* motion for compassionate release, as distinct from a motion filed by the BOP on an inmate's behalf, . . . . U.S.S.G § 1B1.13 remains helpful guidance even when motions are filed by defendants." *Id.* (italics original; internal quotation marks and citations omitted).[9] To state otherwise, even if an inmate has shown extraordinary and compelling reasons warranting a

---

[9]Section 1B1.13 provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
>   (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G § 1B1.13.

reduction, a court still must consider the applicable § 3553(a) sentencing factors and decide "whether to exercise its discretion to reduce the defendant's term of imprisonment." *Id*. (internal quotation marks and citations omitted).

In this case, the Court finds Defendant suffers from significant health concerns. Defendant is a nearly 57 year old black male who suffers from high blood pressure, stage three kidney disease, hyperlipidemia, gout, and psoriasis. His has a BMI of 34.9%. According to the medical records, he has been prescribed Amlopidine (high blood pressure), Lisinopril (high blood pressure and heart failure), and Eliquis (preventing blood clots and stroke). In February 2021, Defendant was hospitalized with a pulmonary embolism. After he was released from the hospital, he was diagnosed with COVID-19 and suffered from pneumonia. Although Defendant has been vaccinated and the Bureau of Prisons appears to have taken reasonable steps in monitoring and treating Defendant's medical conditions, the Court finds that his chronic kidney disease, history of pulmonary embolism, an increased BMI, and possibly his hypertension place him at significant, particularized risk of developing severe complications from COVID-19 if he becomes reinfected.[10]

Despite the Bureau of Prisons' commendable efforts to prevent the spread of COVID-19 at its facilities, FCI Memphis, where Defendant currently is housed, has had 230 inmates and 125 staff members contract and recover from virus and 2 inmates have died.

---

[10] *See* CDC, "Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals," https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.Html (last visited Sept. 26, 2022).

11

https://www.bop.gov/coronavirus/ (last visited Sept. 26, 2022). Given Defendant's medical conditions and the fact he developed a pulmonary embolism and pneumonia, he is fortunate to have recovered after his first bout with the illness. However, there are no guarantees he will be so lucky if he is reinfected. Certainly, his medical history weighs against a quick and complete recovery. Although there are currently no inmates and only two staff members with COVID-19 at FCI Memphis, there obviously has been significant spread of the illness since the pandemic began and the possibility that Defendant may experience a severe outcome only increases as he ages. In addition to this increased risk, Defendant claims that his stage three kidney disease has reduced his life expectancy, with "one estimate indicating that the average life expectancy for men who are age forty is twenty-four years." *Mem. of Def. Re: Court's Sept. 8, 2021 Order*, at 10, ECF No. 10 (citing Cherney, Kristeen, February 7. 2020, available at https://healthline.com/health/stage-3-kidney-disease (updated on January 19, 2022; last viewed on Sept. 26, 2022)). In other words, assuming this scenario, Defendant's average life expectancy is approximately seven more years.

Additionally, as previously stated in its now vacated decision of December 3, 2019, the Court's disagreement with the Guideline range as applied to Defendant is as deep-seated as it is well-documented. At his original sentencing, the Court noted that it would be unlikely to sentence Defendant to a lifetime term of imprisonment "if [the] guidelines didn't require it." *Sentencing Tr.*, at 28. The Court observed that Defendant was "an intelligent person," "articulate," and someone who "could have been a success at anything that [he] set out to do." *Id.* While recognizing that "[a]n awful lot of lives [had] been either ruined or substantially impaired"

because of Defendant's offense conduct, the Court considered it "a tragedy . . . to see someone of [Defendant's] age and . . . potential spend the rest of their life in prison[.]" *Id.* at 27–28. Notwithstanding these factors, the Court lacked the authority at the time to vary from Defendant's lifetime term of imprisonment under the Sentencing Guidelines.

Now, the Court is no longer bound by these constraints, and it may consider the remedial purposes of the Fair Sentencing Act and First Step Act in rectifying the racially disparate penalties applied to cocaine base offenses. Given the Court's ability to impose what it believes is a more equitable and just sentence, in combination with Defendant's particularized susceptibility to a severe outcome from contracting COVID-19, the Court finds Defendant has satisfied the "extraordinary and compelling" prong of § 3582(c)(1)(A).[11] However, as previously mentioned, the Court analysis cannot stop here. It also must consider whether Defendant's sentence should be reduced under the relevant factors found in § 3553(a).

Section 3553(a) provides that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a), in part. In order to do so, the Court must conduct an "individualized assessment," *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020), and evaluate, as applicable:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[11] It is uncontested that Defendant filed for compassionate release with the Bureau of Prisons and had his claim denied. *See* 18 U.S.C. § 3582(c)(1)(A) (setting forth exhaustion requirement).

> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1) and (2); *see United States v. Jenkins,* 22 F.4th 162, 170 (4th Cir. 2021) ("If a district court finds that a defendant has demonstrated 'extraordinary and compelling reasons' for release, it must then consider the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's sentence.").

Applying the relevant factors here, the Court recognizes that Defendant committed serious offenses, having pled guilty to conspiring to distribute a large amount of cocaine base, together with cocaine and marijuana; using a firearm during a drug trafficking offense; and conspiring to launder money. Defendant also faced an increased statutory penalty for having been convicted previously in Georgia of the felony offense of possession of cocaine with intent to distribute. Defendant's conduct certainly warranted a significant sentence. However, Defendant has been incarcerated since February 11, 1998, nearly twenty-four and one-half years, and he certainly already has been severely punished. Additionally, having served such

a lengthy sentence, the Court finds that Defendant, at age 57, now is substantially less likely to reoffend if released. According to the Sentencing Commission, the rate of rearrest for those 55 to 59 is only 22.2% and the rate of reconviction is only 12.2%. U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 23 (Dec. 7, 2017).[12]

   Moreover, despite the difficulty prison life presents and Defendant not knowing whether he would ever be released from behind bars, he appears to have made the most of the opportunities he has been given to improve himself while incarcerated. Defendant has completed educational programs, including drug education, and he has fulfilled his financial obligations. In many respects, Defendant has been a model prisoner, accumulating extremely few sanctions over the course of his incarceration. In fact, in 2020, Defendant received a commendation for "[a]n act of heroism" for intervening when another inmate began chasing a female unit officer. *See* Monetary Special Award Recommendation, ECF No. 1541-1.

   At this point, Defendant's projected release date is December 9, 2025, just over three years from now. Upon consideration of the above factors, the Court finds this additional amount of incarceration would do little to change the Court's calculus under the § 3553 factors. To that end, the Court specifically finds from the totality of the circumstances that keeping Defendant incarcerated for another three years is greater than necessary to reflect the seriousness of his offenses, promote the law, provide just punishment, deter further criminal conduct, and

---

[12]*Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last viewed on Sept. 26, 2022).

protect the public from further crimes. The Court simply finds no real benefit to Defendant or society in making what already had been a long sentence even longer. However, the Court does not believe granting Defendant's request for "immediate" release completely fulfills the purposes of sentencing. It is critical that Defendant be prepared for his release to give him the best chance of success. Therefore, the Court finds that an additional sixty day period is necessary to allow the Bureau of Prisons to develop a suitable release plan that will help Defendant adjust to life after prison. Prior to release, the Court also recommends that the Bureau of Prisons evaluate and treat Defendant's medical conditions and provide him with whatever information he will need to maintain his health once released.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** Defendant's Motion for Compassionate Release (ECF No. 1508) and his motion requesting relief under the First Step Act (ECF Nos. 1451)[13] to the extent discussed above. The Court **DENIES** the remainder of these motions and all other currently pending motions. Keeping in mind both the procedural and substantive reasonableness requirements of *Collington*, the Court resentences Defendant to time served as of November 28, 2017 on Count Two. The Court has credited all good-time earned by Defendant as of today in the recalculation of Defendant's sentence on Count Two. The Court also reimposes a consecutive term of sixty months on Count Thirteen. Defendant's sentence on Count Thirteen shall be deemed to have started on November 29, 2017 and shall end on November 28, 2022. Thus, as of today, Defendant will end his term of

---

[13]This motion is entitled "Motion Requesting Immediate Release from Federal Prison." However, the Court construes the motion as one for a reduction in sentence under the First Step Act.

imprisonment on Count Thirteen on November 28, 2022, which is sixty days from today's date. The Court finds this amended sentence completes his term of imprisonment on Count Two and his consecutive term of imprisonment on Count Thirteen. The Court also reduces Defendant's previous term of supervised release to three years on Count Two, with a concurrent term of three years on Count Thirteen. The conditions of supervised release shall be those set forth in the Amended Judgment Order.

In closing Mr. Spotts, the Court strongly encourages you to take full advantage of the supports and resources of the Probation Office while on supervised release. After being incarcerated for so many years, transition can sometimes be difficult, and the Probation Office is there to assist you in that process. Do not be afraid to ask for and receive help to keep you on a positive path moving forward. It is the Court's sincerest hope that, once released, you will continue with the good behavior you exhibited while incarcerated so that you can live a productive and rewarding life. Good luck to you Mr. Spotts.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and the Warden of FCI Memphis.

ENTER: September 29, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE